IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES BATTISE,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

Civ. No. 6:15-cv-00073-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff James Battise brings this action for judicial review of the Commissioner's decision denying his application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    On November 14, 2003, Battise filed an application for disability insurance benefits. After multiple remands from the Appeals Council, the administrative law judge (ALJ) determined Battise was not disabled during the relevant period (from the alleged onset date of August 29, 1982, to December 31, 1987, the date last insured). Tr. 21.[1] Battise's main arguments are that the ALJ failed to account for his PTSD and left arm limitations, failed to properly weigh the medical opinions, and erred in finding Battise not fully credible. For the reasons stated below, the Commissioner's decision is AFFIRMED.

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**I. ALJ's omission of mental limitations in Battise's residual functional capacity (RFC)**

Battise argues that the ALJ erred by not finding Battise's PTSD qualified as a "severe" impairment at step two and subsequently failing to include any mental limitations in Battise's RFC.

The ALJ rejected Battise's argument that PTSD severely impacted his ability to sustain full-time employment during the relevant time period. Tr. 32. This finding is supported by substantial evidence in the record. First, there is little evidence PTSD symptoms limited Battise's ability to sustain employment before December 31, 1987. In October 1998, eleven years after Battise's date last insured, he "briefly mentioned that he has problems with nightmares and sleeplessness secondary to his flashbacks from the Vietnam War." Tr. 381. There is little to no evidence of any PTSD limitations during the relevant time period.

Although Battise claimed to suffer PTSD from Vietnam, Battise performed substantial gainful activities for several years after returning from Vietnam, but before the relevant time period. In fact, injuries from a motorcycle accident, and not limitations from PTSD, forced Battise to leave his job in 1982. Additionally, limitations from PTSD stem from Battise's self-reports which, as discussed below, the ALJ found were not entirely credible. Finally, medical records from 2008, twenty years after Battise's date last insured, note "there is not a clear dx of PTSD, and the monologues have a delusional flavor. Content also notable for grandiosity. No formal testing, and possible cognitive obstacles." Tr. 644. Battise then had a negative result from a PTSD screening test. Tr. 647.

The ALJ did not err in failing to formulate mental limitations into Battise's RFC.

3 – OPINION AND ORDER

**II. ALJ's finding that Battise's left arm was not significantly limited**

Battise has the burden to show that he was disabled before the date last insured. *Tidwell v. Apfel*, 161 F.3d 599, at 601 (9th Cir. 1998), *as amended* (Jan. 26, 1999). Battise argues that the available medical evidence and his own testimony should have been enough evidence for the ALJ to find that he had significantly limited left arm function.

Here, we have limited medical history for Battise during the relevant time period. The record contains an examination of Battise 11 years after his date last insured, and opinions of two doctors who examined the evidence and testified before the ALJ. Not all of the medical opinions align perfectly with one another. "Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). When the ALJ rejects a contradicted medical opinion, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 126 (9th Cir. 2005).

**A. Medical opinion of Keith Dipboye, M.D.**

Keith Dipboye examined Battise on October 24, 1998, 11 years after Battise's date last insured. Tr. 30. Dr. Dipboye noted Battise "has extremely limited use of his right arm." Tr. 380. At the time, Battise stated he could carry 20 pounds in his right hand, but only for a short period of time. Tr. 380. Regarding Battise's left arm, Dr. Dipboye stated "he has *begun to develop* left elbow pain." Tr. 380-81 (emphasis added). Battise thought the left arm pain stemmed from overuse. Tr. 381. Battise managed his pain with ibuprofen. Tr. 381. Dr. Dipboye did not indicate that these left arm limitations were present prior to the date last insured, i.e., 11 years before the examination. Tr. 30. The statement that Battise had just "begun to develop left elbow pain" supports the ALJ's conclusion that Battise had no left arm limitations in 1988.

The ALJ gave little weight to the opinion of Dr. Dipboye "because any effort to connect the claimant's limitations in 1998 to a time prior to December, 31 1987, as argued by the claimant's representative, is highly speculative." Tr.30. As Dr. Dipboye's opinion concerned Battise's limitations as of 1998, and as Dr. Dipboye's opinion indicates Battise only recently began to develop left arm limitations, the ALJ did not err in rejecting Dr. Dipboye's opinion as to the relevant time period.

**B. Medical opinions of Dr. Bigley & Dr. DeBolt.**

Dr. Bigley testified at Battise's 2006 hearing. Dr. Debolt testified at Battise's 2008 hearing. Dr. DeBolt testified that during the relevant time period, Battise could lift 20 pounds occasionally and 10 pounds frequently with his left arm. Tr. 1041. In contrast, Dr. Bigley testified that prior to his date last insured, Battise could lift 10 pounds occasionally and less-than 10 pounds frequently. Tr. 982.

The ALJ had to resolve that conflict and assigned greater weight to Dr. Debolt's opinion. Tr. 30. The ALJ concluded Dr. Bigley's testimony was vague and overlooked the crucial significance of finding impairments as of Battise's date last insured. Dr. DeBolt's testimony, on the other hand, was clear and focused on the 1982−88 time period. This specific and legitimate reason for assigning more weight to Dr. Debolt's opinion is supported by the record.

Dr. Bigley testified that "on many occasions . . . since '83, [Battise] complained about pain in both arms." Dr. Bigley opined Battise's left arm limitations had been severe since the date of the motorcycle accident. Tr. 971. Under questioning from the ALJ, Dr. Bigley admitted that he did not know when Battise began complaining about left elbow pain. Tr. 971. The transcript reveals there was confusion regarding Dr. Bigley's conclusions from the VA and Chemawa medical records. *See* Tr. 971-75.

5 – OPINION AND ORDER

Additionally, the ALJ noted that Battise's own comment that as of his October 1998 examination, he could carry 20 pounds with his right arm was incompatible with Dr. Bigley's more restrictive limitation. Finally, the ALJ noted Battise's activities of daily living aligned better with Dr. Debolt's opinion that Battise could lift 20 pounds occasionally and 10 pounds frequently. The ALJ provided "specific and legitimate" reasons supported by substantial evidence in weighing the conflicting medical opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 126 (9th Cir. 2005). In short, substantial evidence supported the ALJ's conclusion that Battise did not suffer any left arm limitations during the relevant time period. Although Battise argues another interpretation is reasonable, this is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.")).

### III. The ALJ's adverse credibility determination

In making an adverse credibility determination regarding Battise's subjective reporting on the severity of his symptoms, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Battise's testimony. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)). The ALJ provided multiple reasons for finding Battise not entirely credible:

> In the recent hearing, the claimant testified that he lived with and took care of his ailing stepfather around 1983, who died in 1986. The claimant said he did the household chores and "whatever he had to do." As noted above, he also lived on property where he cared for farm animals. He also impressed the undersigned with his ability to fix, maintain and operate boats, despite his alleged limitations to his left arm.

Tr. 31.

The ALJ did not err in concluding Battise's daily activities contradicted his subjective reporting of his limitations. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

The ALJ also noted that the medical record contradicts Battise's claimed limitations. As discussed above, Battise told Dr. Dipboye in 1998 that he could briefly lift up to 20 pounds with his right arm. More important to the outcome here, Battise informed Dr. Dipboye that he recently began having pain in his left arm in 1998. And as discussed above, although Battise argues his PTSD from Vietnam prevents him from working, Battise worked for several years after returning from Vietnam and stopped working due to injuries sustained in a motorcycle accident. The ALJ did not err in finding Battise not fully credible.

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.[2]

IT IS SO ORDERED.

DATED this 1st day of March, 2016.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

---

[2] Battise's other arguments essentially rehash, or rely on, the arguments dismissed above. For example, Battise argues the ALJ erred in formulating the RFC by not including Battise's left arm and PTSD limitations. Battise's other argument, that the ALJ defacto reopened the December 8, 1998 application, is meritless as this case does not involve any *res judicata* issues.

7 – OPINION AND ORDER